By the Court. Woodruff, J.
—The rights of the cred-tors of Thomas Butler, to obtain payment out of the property described in the complaint herein, may perhaps depend upon the time when their debts were contracted. At all events, it may be material to consider the title of the defendant, his wife, in two aspects.
*485 First, what rights did she acquire by the deed to her, and how far did the circumstance, that her husband paid the consideration money subject the property to the payment of his debts; and second, how is her title and the rights of subsequent creditors affected by the proofs that her husband subsequently improved the property by the erection of buildings thereon, and the other circumstances which led the judge at special term to conclude that the whole was an arrangement made to defraud creditors.
We observe then, in the first instance, that if no other proofs had been given, except that the husband paid the consideration, and that the land was conveyed to his wife, the conveyance would not necessarily have been void, as to subsequent creditors of the husband.
In order therefore, to show that the conveyance was a part of a scheme actually fraudulent, and still further carried out by the further appropriation of the husband’s property to its improvement and enhancement in value by the erection of buildings thereon, the plaintiff gave evidence tending to show that Thomas Butler, the husband, employed masons, carpenters, and others to erect houses on the lots, and that he paid them, with the exception of one instance, in which it appeared that payment of a small amount has not yet been made, and another in which it does not appear, whether the whole is paid or not. To rebut the inference of fraud, which might result from this proof, it was offered to be shown on behalf of the wife, that, having received the title to the lots, she mortgaged them to raise money, and she was permitted to show this. It was then further offered to be proved, that the money so raised, was taken by her husband for the purpose of paying the cost of the improvements, and was by him actually paid out to the masons, carpenters and others, for their work and materials used in the erection of the buildings, and this evidence was rejected. We think it quite plain, that the evidence given by the plaintiff, that Thomas Butler paid for the erection of the buildings was given, received and acted upon by the judge, as the findings of *486 fact indicate for the purpose of establishing, continued fraud on the part of Thomas Butler, in expending money for the improvement of land which had been conveyed to his wife, and'to establish that the whole was a scheme to defraud his creditors, as well those who were such when the conveyance was made, as also those who were subsequent.
Such evidence was material, or- it was not; if it was material, and tended to show such fraud, it was certainly competent for the defendant to rebut it by counter proofs, or to explain it by proofs which showed that the transaction was.consistent with an honest intent in the mating of those improvements.
If, therefore, the decision of the case in any degree depended upon inferences drawn from what was done by Butler after the conveyance of the lots to his wife, the testimony she offered, which would have shown (we must assume) that the subsequent improvements were made exclusively with money raised by her by mortgaging the property, was material and proper; and this is clearly so, when offered to rebut inferences sought by the plaintiff to be raised from the circumstance that her husband paid the money to the builders. The plaintiff by that proof opened the question, and when he had proved that the husband made the payments, he could not legally object td proof, that the money so paid by the husband, was raised by her mortgage on the lots themselves; nor did the fact, that the husband united in the mortgage, alter the case in this respect. The lender might well at 'that period have declined taking a mortgage executed by a wife, without her husband joining therein to signify his assent thereto.
It is sought to justify the exclusion of this evidence on the ground, that the wife by whom the testimony was proposed to be given, was incompetent to testify when her husband was a party to the suit.
It is sufficient to say of this, that the proof offered, was not rejected upon any such ground. The objection made by the counsel was, that the proof was immaterial, and *487 that objection was sustained. The wife was permitted to testify. The judge, in opposition to the plaintiff’s objection, held her a competent witness, and permitted her to testify to the mating of the mortgages, and that the moneys raised thereby, were paid to her husband. The defendant was permitted to go so far in her proof, and was then stopped, i. e., she was permitted to state facts just sufficient to strengthen her adversary’s claim, that the property was practically treated as her husband’s property, and the moneys raised by mortgaging the same were paid to him, and then when she proposed to remove from these circumstances, the appearance of fraud by showing that the husband only received the moneys, in order to pay them out for her benefit, by paying for the improvements, which would be consistent with her ownership of the lots as her separate estate, she was prevented on the ground, that such proof was immaterial.
The suggestion that she was herself not a competent witness, will not avail the respondent for another reason. The defendant, for the purposes of the case on this appeal, has a right to assume that the ruling of the court, permitting her to testify, was correct. Had it been ruled otherwise, she would have had an opportunity to except, and would have had a right to except, and present that question for review on appeal. She having been received, is entitled now to insist that the testimony she offered, ought to have been received, if it was material, and would have been competent, had another witness been called to prove the same facts, for there is now no pretence, that if she was competent to testify generally in the cause, there was anything in the particular fact sought to be proved, which, on . any ground of special privilege or violation of confidence between husband and wife, required its exclusion.
And still further, if the exclusion had not been placed upon the specific ground that the proof was immaterial, the defendant might have called other witnesses to establish the facts proposed to be proved.
*488 Again, it is suggested that the exclusion of the proof offered, has done no possible injury to the defendant, since, if the facts offered to be proved, were in the fullest manner conceded, it could not possibly have affected the result; the court must still have found the fraud established, and that the plaintiff was entitled to satisfaction out of the property.
If that conclusion is the necessary result of the clear proof, that the purchase of the lots was with the husband’s property, without any consideration of the subsequent conduct of the parties and their dealing in respect thereto, there would be some force in this suggestion. But so far as the case rests at all upon the idea of actual fraud; or upon the claim, that the husband used and improved the property as, his own, it is impossible to say that, had it appeared that (the lots having been conveyed to the wife) the moneys raised for their improvement, were raised for her, and expended for her benefit, and that her husband contributed nothing; such proof would not have affected the conclusion of fact, that the purchase and the improvement of the property were an intended actual fraud upon the plaintiff, and other creditors of the husband. The proof would have furnished an explanation of the circumstance that he paid the bills, which was quite consistant with the claim that all that was done after the conveyance of the lots to the wife, was perfectly honest and fair towards all the world, his creditors subsequent to such conveyance included.
We are, therefore, brought to the inquiry whether, upon the clear proof that the consideration for the conveyance of the lots proceeded from the husband solely, and the further proof, that he at that time owed a judgment to George W. Niles, for $141.84, (May 22, 1841,) and another debt to Benjamin P. Jones, on which a judgment was recovered two years afterwards for $514.51, the court were bound to determine, that the conveyance-to the wife was fraudulant and void as to the plaintiff, a subsequent creditor of the husband, by judgment recovered nearly ten years after such conveyance was made ?
*489 Unless the court was bound so to hold, then, as has already been shown, there was error in rejecting proofs which tended to rebut the evidence of actual fraudulent intent in the transaction, and remove the grounds of suspicion by explaining the circumstances out of which it arose.
What then is the consequence of the proof above stated, independent of any proof of an actual intent to defraud creditors ?
In the first place, it must be treated as a voluntary conveyance, as between the husband and wife, procured by the husband on payment by him of the consideration.
In Reade Administrator v. Livingston, (3 Johns. Ch. 481,) it was held by Chancellor Kent, that a voluntary settlement made by a husband on his wife after marriage, is presumed fraudulent as against creditors to whom the husband is then indebted, and that as to them such presumption is conclusive, and cannot be repelled by proofs. But as to subsequent creditors, the learned Chancellor intimates an inclination, that such presumption may be rebutted, and if not rebutted, such settlement may be impeached by them also, without any other proof, than the fact that the husband was indebted to other parties at the time. He cites numerous cases to show that a voluntary conveyance will be valid as against subsequent creditors, if shown to be made in good faith, and without fraudulent intent.
The case of Seward v. Jackson, (8 Cow. 406, 422, 435, 437, &c.,) in the court of errors, is distinct to the point, that as to subsequent creditors, a voluntary conveyance js not necessarily fraudulent, Stebbins, Senator, says, a subsequent creditor must show actual fraud. In the case of Seward v. Jackson, the authorities are collected and reviewed at great length.
The Revised Statutes subsequently enacted, contain a provision which meets the question very distinctly. In view of the cases above referred to, and that of Verplanck v. Sterry, (12 J. R. 535, 555,) the revisers were of opinion, that the question how far a voluntary conveyance *490 was to be deemed fraudulent, was in this State undecided, and also that the decisions of the courts of England, by whom it had been held fraudulent as matter of law, were erroneous. They therefore recommended, and the Legislature adopted, section 4, of title 3, chapter 1, of part second of the Revised Statutes, (vol. 2, p. 131) which, being a part of the chapter relating to fraudulent conveyances and assignments of property real and personal, enacts that, “ the question of fraudulent intent in all cases arising under the provisions- of this chapter, shall be • deemed a question of fact, and not of law; nor shall any conveyance or charge be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration.” (See Revisers7 notes to this section, 3R. S., 2d ed. p. 658.)
And the case of Carpenter v. Roe, (10 N. Y. R, [6 Seld.] 227,) proceeds upon the ground that the proof of fraudulent intent was ample, and the conveyance therefore void.
These cases, and the express provision of the Statute forbid us to say, that as to subsequent creditors, the conveyance in question was necessarily' fraudulent. The validity of the conveyance as to this plaintiff, depended upon the whole proof in the cause, bearing on the question of fraud, and this again, brings us to the conclusion that the proofs rejected ought to have been received; they were in their nature competent and material, because they bore upon that question, and we are not at liberty to say, that if they had been received, they would not have influenced the court in passing upon the question of actual fraud as one of fact, to be decided upon all of the evidence.
This case, however, by no means rests here. The effect of a conveyance which is to be deemed voluntary, not between the parties thereto, grantor and grantee,' but only between the grantee and one who pays the consideration money, is itself specifically declared by another provision of the Revised Statutes, that has a very important, if not conclusive bearing on this case, which the counsel for the defendant has urged upon our attention.
*491 Sections 51 and 52 of article 2, title 2, chapter 1, part 2, (1 Revised Statutes, 128,) provide in terms (§51) that “where a grant for a valuable consideration shall be made to one person, and the consideration therefore shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section. This abrogated the former doctrine of resulting trusts in such cases. And (§ 52) “Every such conveyance shall be presumed fraudulent as against the creditors at that time of the. person paying the consideration; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands.” (See Wait v. Day, 4 Denio, 439 ; Brewsters. Power, 10 Paige, 562 ; Garfield v. Hatmaker, 15 N. Y. R. 475.)
These sections describe the present case, and declare that even as to existing creditors, such a conveyance shall only be presumptively fraudulent; that presumption may be rebutted, and the fraudulent intent disproved; and as to subsequent creditors, such a conveyance is not fraudulent but perfectly valid and effectual to vest the title in the grantee. Such a conveyance is always, under this Statute, as between the grantee and the person paying the consideration, voluntary," in precisely the sense in which the conveyance here was voluntary as between the husband and wife. And although voluntary in that sense, and notwithstanding it is made while the person paying the consideration is indebted, still it is only fraudulent as to those who are creditors at that time, and only to the extent necessary to satisfy their just demands.
The result is, that neither the fact that the husband, Thomas Butler, paid the consideration of the conveyance of the lots in question, to his wife; nor the further fact that he was indebted at the time to the two creditors above mentioned, is sufficient to warrant the court in adjudging *492 the conveyance fraudulent as to the plaintiff, a subsequent creditor of the husband.
There is some plausibility in the proposition that the sections of the Statute last referred to, will forbid an impeachment of the conveyance by subsequent creditor when a debtor pays the consideration, even by showing an actual intent to defraud them; and that in such case they, having trusted the husband after the conveyance to his wife, cannot . be said to have given credit to the land, but relied, and voluntarily relied, upon the husband’s personal responsibility.
It is not necessary in this case to say, that where, with a view to subsequent indebtedness, or the possible results of future enterprises or speculations, and to secure his property from application to debts to be contracted and defeat their recovery, a person invests his money in lands, and causes the conveyance to be made to a third'person, (whether his wife or any other,) the subsequent creditors cannot impeach the conveyance and recover their debts out of the property. There is no such finding of fact in this case, nor any equivalent finding; and again as before, if any such claim was made on the' trial, the proofs which were rejected were material as tending to remove any ground for such a conclusion or suspicion.
We do not perceive that the provisions of the acts in relation to the property of married women, passed in 1848 and 1849, are material to this case. The question whether the conveyance is fraudulent or not, is not affected by those Statutes. If, at the time of the conveyance of the lots to the defendant, (appellant,) that conveyance was not fraudulent and void as to subsequent creditors of her husband; and we have shown that the mere facts that he paid the consideration and was at that time indebted, did not make it so; then as to such subsequent creditors, it became her separate property, and we perceive no reason why she might not convey it by way of mortgage, to raise money to improve it. Nor would the circumstance that her husband assisted, by acting as her agent, in directing the erections and disbursing the moneys, impair her title.
*493 Anri it is proper to add, that if a debt was contracted in making the improvements which remains now unpaid, it does not at all show that the appellant’s title is fraudulent. If that creditor can make a proper case entitling him to payment out of the property, as for money expended, or work, labor, or materials furnished for the improvement of the appellant’s separate property, the court, as a court of equity, may protect him without any impeachment of her title, but in a proceeding in affirmance thereof.
For these reasons, we think the judgment must be reversed and a new trial ordered, with costs to abide the event.